**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

**UNITED STATES OF AMERICA**

        -against-                      No. 13 Cr. 242 (SAS)

**ROBERT HENDERSON,**

        Defendant.

-----------------------------------------------------------X

**MEMORANDUM IN AID OF SENTENCING**
**ON BEHALF OF DEFENDANT ROBERT HENDERSON**

                                  Law Offices of Susan G. Kellman
                                  Attorney for Robert Henderson
                                  25 Eighth Avenue
                                  Brooklyn, NY 11217
                                  (718) 783-8200
                                  kellmanesq@aol.com

Izabel Olszowa Garcia, Of Counsel
26 Court Street
Suite 1815
Brooklyn, NY 11242
(718) 624-4734

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

**UNITED STATES OF AMERICA**

       -against-                                  No. 13 Cr. 242 (SAS)

**ROBERT HENDERSON,**

       **Defendant.**

-----------------------------------------------------------X

## INTRODUCTION

ROBERT HENDERSON now appears before this Court for sentencing following his guilty plea to participating in a conspiracy to distribute and to possess with the intent to distribute heroin.  Mr. Henderson respectfully requests that the Court accept his representation that he fully and unconditionally accepts responsibility for his conduct. Nothing in this memorandum is intended to detract from his acceptance of responsibility or his unqualified remorse for his wrongdoing.

This memorandum is submitted on behalf of Robert Henderson in support of his request for a non-Guidelines sentence of time served, followed by house arrest, and a three-year period of Supervised Release.  At the time of sentencing, Mr. Henderson will have served twenty months in prison. We respectfully submit that such a sentence is

warranted based on Mr. Henderson's history and characteristics, including his family circumstances and his involvement in the offense, and is "sufficient, but not greater than necessary, to comply with" the sentencing purposes set forth in § 3553(a).

## THE OFFENSE CONDUCT

On May 26, 2014, Mr. Henderson entered a guilty plea to a lesser, included offense of Count One of a three-count indictment. That count charged that, between 2008 and April 2, 2013, in the Southern District of New York, he and others participated in a conspiracy to distribute and possess with the intent to distribute one kilogram or more of heroin and 280 grams and more of cocaine base, in violation of 21 U.S.C. §§841(b)(1)(A).

## THE PLEA AGREEMENT

Mr. Henderson pled guilty to a lesser-included offense of Count One, participating in a conspiring to possess and sell heroin in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C).  This count carries a range of imprisonment from 0 to 20 years.  The plea agreement assumes the following guideline calculation:

| | |
|---|---|
| Base offense level: | 26 |
| Acceptance of responsibility: | -2 |
| <u>Timely notice of intention to plead:</u> | <u>-1</u> |
| Adjusted Guidelines offense level | 23 |

However, since Mr. Henderson pled guilty in this matter, there has been an amendment to the drug quantity table of the United States Sentencing Guidelines, which changes Mr. Henderson's base offense level.  Pursuant to the November 1, 2014 version of the Guidelines manual, the base offense level for at least 100 grams but less than 400 grams of heroin and at least 28 grams but less than 112 grams of cocaine base, is now 24.  After a three level reduction for acceptance of responsibility and timely notice of intention to plead, the applicable Guidelines offense level is now 21.

Based upon the information available to the government and the defense counsel at the time of the plea agreement, the parties calculated defendant's criminal history points to be seven, which placed the defendant in Criminal History Category IV.  The defense now concurs with the Department of Probation that the defendant has three criminal history points as calculated on pages 12-13 of the Pre-Sentence Investigation Report ("PSR") and summarized in paragraph 57, page 13.

Because Mr. Henderson has three criminal history points, he is in Criminal History Category II. Thus, his sentencing range is 41 to 51 months of imprisonment, not 70 to 87 months as stated in the plea agreement. Defense counsel sought the government's consent to the application of the Probation Departments' criminal history point calculations and the November 1, 2014 guidelines, but to this date has not received a response.  Under the terms of the plea agreement, either party may present information relevant to sentencing under § 3553(a).

## **THE PRE-SENTENCE INVESTIGATION REPORT**

**Objection to the Guidelines Calculation**

The stipulated Guidelines calculation, which appears in paragraph 6(g) of the PSR is inaccurate for two reasons. First, it was based upon the erroneous calculation of defendant's criminal history points, and second it was calculated using the November 1, 2013 version of the Guidelines manual. As addressed above, defendant's criminal history points were calculated in error, which placed Mr. Henderson in the wrong Criminal History Category. Applying the November 1, 2014 version of the Guidelines, Mr. Henderson's base offense level is 24, and his adjusted Guidelines level is 21. His Criminal History Category is II, thus his adjusted Guidelines sentencing range is 41 to 51 months as set forth in paragraph 110 of the PSR. We respectfully ask that the Court order paragraphs 6(e), (f), (g), and (i) be amended so that the Guidelines calculation reflects the amendment which took effect on November 1, 2014 and the correct Criminal History Category.

Mr. Henderson has no other objections to the PSR.

## **THE APPROPRIATE SENTENCE**

Title 18, United States Code, Section 3553(a) directs a sentencing court to impose a reasonable sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing. This statutory mandate has taken on new meaning in light of the Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220

(2005), *Gall v. United States*, 552 U.S. 38 (2007), *and Rita v. United States*, 551 U.S. 338 (2007), as well as the Second Circuit's decision in *United States v. Crosby*, 307 F.3d 103 (2d Cir. 2005), and its progeny.

In *Gall*, the Supreme Court held that while the Guidelines should be "the starting point and the initial benchmark" of a reasonable sentence, the sentencing judge "may not presume that the Guideline range is reasonable" and "must make an individualized assessment based on the facts presented." Gall, 552 U.S. at 50. The Court also "reject[ed] an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." *Id.* Thus, a sentencing court, after considering the advisory Guidelines, is free to fashion a reasonable sentence that it deems appropriate based upon all of the sentencing factors set forth in 18 U.S.C. § 3553(a).

Robert Henderson was arrested and incarcerated on April 3, 2013. He remains in custody at the Metropolitan Detention Center ("MDC"). He accepts full responsibility for his criminal conduct and is remorseful for the bad choices he made. Given Mr. Henderson's history and characteristics and the nature and circumstances of the offense as set forth below, a non-guidelines sentence of time served is "sufficient, but not greater than necessary, to comply with the purposes" of the sentencing factors outlined in 18 U.S.C. § 3553(a)(1).

1. **The History and Characteristics of the Defendant**

Robert Henderson is now 34 years of age. He was born on February 8, 1980, in Manhattan, to Delores Henderson Baker and Stephan Lewis.  He had no relationship with his biological father.  In 2010, Robert learned that his father died of smoke inhalation at the age of fifty-three.  At the time of his death, Stephan Lewis was smoking crack in a building that caught fire.  Robert's mother, Delores, struggled as a single parent until she married his stepfather, Robert Baker.  Her marriage may have been the answer to her immediate problems but her new husband and stepfather's appearance on the scene was explosive.

Robert has struggled with drug addiction for over twenty years. At the age of twelve, he began to smoke marijuana, with increasing frequency each year. By the age of eighteen he smoked weed two to three times daily.  By the age of twenty, he smoked three to four times daily.  Robert stopped using marijuana during a period when he participated in a drug treatment program while under the supervision of the Department of Probation, but was drawn back to drugs when, at the age of twenty-seven, he was prescribed Percocet for a toothache.  He states that he got hooked immediately because the "numbness" he felt helped him to get through the day.  He sought pills out on the street to help him cope with the stress and anxiety his daily life.

In the year prior to his arrest, Robert used painkillers heavily on a daily basis.  He felt he could not get enough to feed his addiction as his drug abuse rapidly increased to

numerous pills per day.   In the twenty-four hour period prior to his arrest, he had consumed approximately fourteen pills.  When he entered MDC, Robert weighed 142 pounds and had blood in his stool.  He remained in intake at MDC for a week and a half while the medical staff monitored his withdrawal symptoms and administered Percoset to gradually wean him off the painkillers. Robert now weighs a healthy 176 pounds and views his incarceration at MDC as a "lifesaving" event.

The circumstances that propelled Robert's endeavor to escape reality through drug use began during his pre-teen years when Robert was abused mentally and physically, predominantly by his stepfather, Robert Baker, but also by his mother, Delores Baker, when his stepfather was not available to do the job.  On the day Robert and his mother first moved in with Mr. Baker, Robert received a beating after he fought with his sister.  To discipline Robert, or more likely, to assert his authority in the household, Mr. Baker, who weighed approximately 280 pounds and was six feet tall, ordered Robert to strip.  While standing completely naked Robert, who was 10 year old, received ten lashes with a belt at the hands of Baker.  Robert remembers crying and calling for his mother to comfort him or stop the beating.  Despite his pleas, Delores Baker hid in her bedroom during the lashing.   From that moment forward, Robert understood that no one could protect him from his stepfather.  Robert described his stepfather as the "monster under the bed" who would fly into a rage and administer beatings on a regular basis, even for minor infractions.  In addition to suffering his own physical abuse, on many occasions Robert witnessed his stepfather mentally and

physically abuse his mother. Unable to cope with his tumultuous home environment, Robert turned to marijuana at the age of twelve in order to numb his feelings. A year later, at the age of thirteen, he moved out of his parents' household, and into the home of his older sister, Tina Williams, and her three-year old daughter.

Robert was relieved to be away from the abuse. However, at his sister's home, he found himself unsupervised and without support. Ms. Williams, who was twenty years old, had left the Baker household at the age of seventeen, because of the violence inflicted by their stepfather.[1] By the time Robert moved in with his sister, she was herself overwhelmed with a hectic schedule including work, school, and the care of her own young child. While Ms. Williams tried her best, she could not fulfill the role of a parent. As she states in letter, "By the time Robert came to live with me, the streets were offering him a more appealing lifestyle than his big sister; a lifestyle with no rules or restrictions and the delusion of love and respect from others." (See Letter from Tina Williams, Exhibit A). Having had no parental supervision during his formative years, Robert's behavior became increasingly marred by bad judgment and more frequent drug use.

Prior to his arrest in this matter, Robert lived with his girlfriend, Iraida Gonzalez, their son, █████, who is two years old, and Ms. Gonzalez's son from a prior relationship, █████, who is seven years old. Robert loves █████ as if he were his

---

[1] Like Robert and Tina, Robert's brother, Sean Henderson, also left home as a teenager because he could not endure the abuse inflicted by their stepfather.

own son and he is the only father ▇▇▇ has ever known. ▇▇▇ also has a ten-year old son, ▇▇▇, who lives with his birth-mother, Tenika Ferguson, in the Bronx. Although Robert did not have regularly scheduled visits with ▇▇▇ in the past, he has reached an agreement with Ms. Ferguson allowing Robert to spend more time with ▇▇▇ in the future.

Ms. Gonzalez continues to live with ▇▇▇ and ▇▇▇ in the apartment they shared with Robert. In her letter to the Court, Ms. Gonzalez expresses a plea for leniency based in part upon the hardships she now endures. ▇▇▇ was recently diagnosed with severe autism. (See Letter from Iraida Gonzalez, Exhibit B; Photographs, Exhibit C; and ▇▇▇ Henderson Diagnosis Report, Exhibit D). She summarizes her struggle to manage as follows:

> I am 23 years old and I am taking care of my children and my home on my own. We live alone in a apartment building on the 4th floor with no elevator. [A] simple task like grocery shopping becomes impossible for me with an autistic child and a 7 year old who tries his best to help out. I was in beauty school in May of this year 4 months shy of graduating with my license in Cosmetology, I was forced to withdraw due to my son ▇▇▇'s strict 20 hour a week ABA therapy sessions. Everything has become extremely difficult. My life completely changed when Robert went away.

The daily struggles Ms. Gonzalez faces to care for ▇▇▇ and ▇▇▇ weigh heavily on Robert. In his letter to the Court, Robert, as best he could in his own words, expresses his regret for not being a part of his sons' lives. He states that, "This has been the longest time I've ever been locked up and I know this will be the last time… I

haven't been there for [the kids] in almost two years.  I thought a lot about how me being away for so long hurts them to be without a father."   Recognizing the importance of family, Robert has renewed his relationship with his mother and other family members who are willing to be a support system for him when he is released.  During interviews with counsel, Robert expressed his intention to make his family proud by securing employment, enrolling in training programs, and being there for Ms. Gonzalez and his sons.

When asked to describe himself, Robert replied that he sees himself as a "people person", social, and easy to talk to.  He relishes in gatherings with family and friends at home, most likely because he experienced so few happy times while growing up in his parents' household.  With little modesty Robert describes himself as a great cook and "potential chef".  He recalled cooking Spanish, Italian, and "Soul" food for family and friends before his arrest and boasted about the praise he received for his tasty preparations. Bernard Bruno, Ms. Gonzalez's brother, describes two holiday gatherings in his letter to the Court as follows:   "Thanksgiving and Christmas Eve 2012 was done in my sister's home and Robert presented us with an amazing "Soul Food" dinner he cooked for us.  Our family and friends were there as well and they couldn't get enough of the food, I know I couldn't." (See Letter from Bernard Bruno, Exhibit F).  Robert reports that while incarcerated he has learned patience and discipline, both mental and physical.  He sees these traits as being valuable to him when he leaves prison and works towards his goals.

2. **The Nature and Circumstances of the Offense**

Robert was charged with approximately 30 other defendants as a result of a joint investigation by the New York City Police Department and the Federal Bureau of Investigation into drug trafficking in the area of 194th Street and Briggs Avenue in the Bronx, New York.  The defendants fall into one of three categories:  1) leaders; 2) intermediate level participants who were either (a) runners in charge of distributing drugs from the leaders to the managers and transferring money from the managers to the leaders or (b) managers who distributed the drugs to street-level sellers called pitchers, high-level street seller; or 3) a street-level seller.  Robert falls into the third category, a low-level street seller.  He did not gain a substantial profit from his crime; rather he used any money he earned to feed his own drug addiction.

3. **Mr. Henderson's Acceptance of Responsibility**

Robert accepts full responsibility for his illegal conduct.  He recognizes that the mistake he made caused much pain to the people who love him and that his actions prevented him from being the father he would like to be to his sons.  Reflecting on his own childhood, Robert recognizes the importance of being a loving and involved parent. He states that one of his goals is to be the kind of parent who is worthy of the "father of the year" award.  Robert does not ask the Court to excuse his actions. He asks instead that the Court consider that he has matured immeasurably since the conduct that led to his arrest in April 3, 2013.  As Robert states in his letter to the Court, when he is released from prison, he will support his family by obtaining work with his brother in

construction, while at the same time he will seek to improve his education by taking trade courses.

### 4. Family and Community Support

Robert Henderson's family members who provided information and letters in support of our plea for leniency include his mother, Delores Henderson Baker, his sister Tina Williams, and his girlfriend, Iraida Gonzalez.  In addition, Ms. Gonzalez's brother, Bernard Bruno, and a long-time friend, Janard R. Baxtar, provided letters in support of our request for a lenient sentence.  His brother Sean Henderson provided information during a telephone interview with counsel regarding employment opportunities for Robert.  Sean Henderson has worked consistently for many years as a sub-contractor for various contractors in the New York Area.  He stated that Robert's prospects for employment are very good.  Robert worked for Sean on occasion prior to his incarceration after earning an assistant plumber certificate (See Certificate, Exhibit F). When released from prison, Robert plans to get recertified for work in plumbing as well as other trades to make him a more qualified candidate in the construction industry. While Robert will seek immediate employment in construction with his brother, he envisions his dream job in the culinary world and plans to seek out education and employment opportunities that will allow him to follow this dream.

Delores Baker, Robert's mother, confirms that Robert experienced mental and physical abuse during his childhood.  Although, in her letter, Ms. Baker accepts blame for the circumstances that led to the abusive environment and laments about her failure

to prevent the abuse, Robert does not criticize his mother for her past actions or inaction. He recognizes the futility in assigning blame and instead wishes to nurture a relationship that will bring him closer to his mother in the future. While the PSR makes reference to Robert removing his mother from his contact list, since his interview with Probation, he has renewed contact with her and hopes to build a loving relationship after his release from prison. During a meeting with counsel when asked if he had any ill feelings towards his mother because of his difficult childhood, Robert stated, "After all, I only have one mother and I love her." Robert went on to say that he does not seek to assign blame for his mother's past deeds because he recognizes that she struggled as a single parent and was herself a victim of abuse. Referring to his most recent rapport with his mother in his letter to the Court, Robert states, "Me and my mother are starting to have a better relationship, so that is a good thing that happened out of this." (Robert Henderson Letter, Exhibit G).

Robert's attitude toward his mother demonstrates his maturity and recognition of the importance of family relationships. When Ms. Baker states in her letter "I can promise you Robert is a changed man," she is probably referring to Robert's approach to life and his current situation, which is to look forward, not backward. (See Letter from Delores Baker, Exhibit H). While Robert has had much time to reflect on his past misdeeds, he has learned from his bad choices and now focuses on what he can do to make his life better for himself and his family. In a letter of support and request for leniency, a longtime friend, Janard Baxter, states that he has had numerous

conversations with Robert and confirms that "his mental mind state is completely different than what i[t] was long ago, he is maturing and learning." (See Letter from Janard R. Baxter, Exhibit I).

## CONCLUSION

Based on the foregoing, Mr. Henderson respectfully requests Your Honor consider imposing a sentence of time served, followed by house arrest, and three years of Supervised Release. Given Mr. Henderson's history and characteristics, including the need for his presence in life of his young sons, the nature and circumstances of his involvement in the offense, his acceptance of responsibility, and commitment to leading a drug free and law-abiding life, we respectfully submit that a sentence of twenty-four months incarceration would be "sufficient, but not greater than necessary" to meet the goals of sentencing.

Dated: Brooklyn, New York
       November 20, 2014

Respectfully submitted,

Susan G. Kellman
*Attorney for Robert Henderson*
25 Eighth Avenue
Brooklyn, New York 11217
(718) 783-8200
kellmanesq@aol.com

cc:  AUSA Jared P. Lenow
     AUSA Jessica Ortiz,
     AUSA Jessica Masella

     USPO Emily P. Frankelis

     Robert Henderson